IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| PEGGY O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>BICKFORD SENIOR LIVING; and<br>BICKFORD ASSISTED LIVING AND<br>MEMORY CARE OF URBANDALE,<br><br>Defendants. | No. LACL121760<br><br><br>ORIGINAL NOTICE |

TO THE ABOVE NAMED DEFENDANTS: BICKFORD SENIOR LIVING; and BICKFORD ASSISTED LIVING AND MEMORY CARE OF URBANDALE

You are hereby notified that there is now on file in the office of the clerk of the above court a Petition in the above-entitled action, a copy of which Petition is attached hereto. The Plaintiff's attorney is Thomas M. Werner whose address is 1441 – 29th Street, Suite 111, West Des Moines, Iowa 50266, (515) 225-9300 - telephone, (515) 224-6737 - facsimile.

You are further notified that unless within 20 days after service of this Original Notice upon you, you serve, and within a reasonable time thereafter file, a Motion or Answer in the Iowa District Court for Polk County, at the Polk County Courthouse in Des Moines, Iowa, judgment by default will be rendered against you for the relief demanded in the Petition.

_Randy Osborn_
CLERK OF THE ABOVE COURT
Polk County Courthouse
Des Moines, Iowa

NOTE: The attorney who is expected to represent the Defendant should be promptly advised by Respondent of the service of this notice.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3394. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

EXHIBIT 1

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| PEGGY O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>BICKFORD SENIOR LIVING; and<br>BICKFORD ASSISTED LIVING AND<br>MEMORY CARE OF URBANDALE,<br><br>Defendants. | No. LACL121760<br><br><br>JURY DEMAND |

COMES NOW the Plaintiff, Peggy O'Neill, and hereby demands a jury trial on all issues raised in this action.

Thomas M. Werner
1441 – 29th Street, Suite 111
West Des Moines, Iowa 50266-1309
Telephone: (515) 225-2888
Facsimile: (515) 224-6737
E-mail: twerner777@yahoo.com

ATTORNEYS FOR PLAINTIFF

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| PEGGY O'NEILL,<br><br>Plaintiff,<br><br>v.<br><br>BICKFORD SENIOR LIVING; and<br>BICKFORD ASSISTED LIVING AND<br>MEMORY CARE OF URBANDALE,<br><br>Defendants. | No. LACL119760<br><br>PETITION AT LAW |

COMES NOW the above Plaintiff, Peggy O'Neill, and for her Petition against the above-named Defendants respectfully states to the Court as follows:

INTRODUCTION

1. This is an action brought under the provisions of the Family and Medical Leave Act arising out of Plaintiffs termination from her employment with Defendant on January 31, 2011. In this action, Plaintiff seeks the remedies of reinstatement to her prior job position with Defendants, as well as awards of back pay and lost benefits, future losses, compensatory damages, liquidated damages, reasonable attorney fees, interest, and the costs of this suit.

JURISDICTION

2. The jurisdiction of this Court is invoked under the provisions of the Family and Medical Leave Act, 29 U.S.C. §2601 et. seq.

VENUE

3. Venue is appropriate in Polk County, Iowa, under the provisions of the Family and Medical Leave Act since Defendants are doing business in Polk County, Iowa, and since the unlawful

employment practices complained of herein were committed in Urbandale, Polk County, Iowa.

## PARTIES

4. Plaintiff Peggy O'Neill is a female who resides in West Des Moines, Polk County, Iowa.

5. At all times relevant hereto, Defendant Bickford Assisted Living and Memory Care of Urbandale was a corporation doing business in Urbandale, Polk County, Iowa, and elsewhere in the United States.

6. At all times material hereto, Defendant Bickford Senior Living was a foreign corporation doing business in Olathe, Kansas, and elsewhere in the United States.

7. At all times material hereto, the Defendants were Plaintiff O'Neill's "employer".

## FACTUAL BACKGROUND

8. Plaintiff commenced employment with Defendants in June 2007. At that time, she was hired by Defendants to be the Director of its Bickford senior living facility located at 5915 Sutton Place Drive, Urbandale, Iowa. Thereafter, Plaintiff remained in that job position until her termination from Defendants' employment on January 31, 2011.

9. In mid-May 2010, Plaintiff began to develop what she initially felt to be problems in the middle area of her back. As a result, at that time she began treating with a physician at the Iowa Health Clinic named Dr. Agey.

10. By the months of June and July 2010, the treatment Plaintiff had engaged in did not improve her medical complaints and, instead, Plaintiff's problems began to worsen. As a result, she came under the care of two additional physicians that she was referred to. One was Dr. Tom Hansen of West Des Moines, Iowa, a pain specialist. The other was Dr. David Musgrave, an

osteopathic physician. And, during that same timeframe Plaintiff was referred to an orthopedic physician named Dr. Lynn Nelson.

11. Despite her pain and the progression of her medical condition, Plaintiff continued to work full time for Defendants into the month of July 2010. On July 26, 2010, while at work she received a phone call from Dr. Nelson. In that discussion, Nelson recommended that Plaintiff immediately go to the Iowa Methodist West Hospital in West Des Moines, Iowa, for evaluation and treatment. Plaintiff then followed that advice, and went to Iowa Methodist West Hospital, where she was subjected to evaluation and testing and then hospitalized.

12. That same day, July 26, 2010, after being informed that she needed to remain in the hospital for an undetermined length of time, Plaintiff contacted one of Defendants' Vice Presidents so as to advise her of the situation. In that discussion, Plaintiff informed the Vice President, Theresa Hogenson, that it appeared she was going to be hospitalized for an undetermined timeframe. Plaintiff also told Hogenson that, if necessary, she would like to submit a family medical leave request to Defendants so as to cover her expected absence from work.

13. Sometime thereafter, Plaintiff received FMLA paperwork from Defendants. Upon receipt, Plaintiff filled out her section of the paperwork, and her treating physicians also completed their section of the necessary forms. That FMLA paperwork was then sent back to Defendants' representatives for processing.

14. Subsequent to filling out the FMLA paperwork, Plaintiff was placed on a form of FMLA leave from Defendants' employ while she continued treating for her condition. Plaintiff believes that FMLA leave became effective on July 27, 2010.

15. Plaintiff remained hospitalized at Methodist West Hospital for a period of approximately five days. During the next few months, Plaintiff remained off work on FMLA leave and

continued to treat for her condition. Eventually, her condition was diagnosed as consisting of T9-10 diskitis/osteomyelitis and staph infection on the spine.

16. While off work recuperating Plaintiff regularly kept her superiors with Defendants updated about her medical condition. On October 28, 2010, a letter was sent to Plaintiff by Defendants' Human Resources representative, Christy Dienstbier, stating that Plaintiff's 12 weeks of FMLA leave had expired and Defendants were placing her on a form of "other leave". Since Plaintiff was still treating for her medical condition, and had not yet been released to any type of work by her treating physicians, she remained on that "other leave" subsequent to the letter of October 28, 2010.

17. On December 28, 2010, one of Plaintiff's treating physicians, Dr. Freund, released her to return to work. That is, at that time Dr. Freund wrote Plaintiff a slip stating: "May return to work – 20 pound lifting limit to start – will increase later". After receiving the slip, Plaintiff immediately e-mailed both Defendants' Human Resources representative, as well as Defendants' Vice President of Operations, to inform them of her release to return to her job. When Plaintiff received no response to her e-mails, she sent a second e-mail to those same individuals on either December 29 or 30, 2010. On that same date, Plaintiff also called Defendants' Human Resources representative so as to inform that individual of her release to return to work. However, since that representative was not available Plaintiff left a message with her receptionist informing her that she had been released to return to her job.

18. By December 30, 2010, Plaintiff had heard nothing from Defendants' representatives regarding her return to work. As a result, on that date Plaintiff traveled to her office at the Urbandale Bickford location so as to return to work. Upon arriving, Plaintiff discovered that the lock to her office had been changed. As a result, Plaintiff waited in the Urbandale office

until she could get the attention of Pam Hovden, Plaintiff's new Regional Director. After Plaintiff told Hovden that her physician had released her to return to her job, Hovden's response was to tell Plaintiff that she would not be allowed to return to work that day, that she should go home, and that they needed to meet so as to discuss Plaintiff's return to Defendants' employment.

19. Plaintiff then scheduled a meeting with Hovden so as to discuss her return to work. That meeting was held in early January 2011, and was attended by Plaintiff, Hovden, and Carrie Traetow, Defendants' Vice President of Operations. In that discussion, Plaintiff was told that the Urbandale operations had become "a mess" while she had been off work, that there was a backlog of paperwork, and that there were now 24 "open" units not being utilized by residents. In the meeting, Hovden also stressed to Plaintiff that she would be very busy upon her return to work. When Plaintiff reminded her that she was just coming off a lengthy recuperative period from a serious medical condition, Hovden seemed annoyed by that fact. At a later point after Plaintiff returned to work, Hovden again mentioned the backlog of work that was waiting for her and stated that Plaintiff would "have to get used to no sleep".

20. Thereafter, Plaintiff returned with medical restrictions to her job as Director of Defendants' Urbandale facility on January 17, 2011. Plaintiff then worked full time until January 31, 2011.

21. On January 31, 2011, Plaintiff came to work as usual. However, shortly after her workday began she noticed that her Regional Director, Pam Hovden, had come to the Urbandale office. Hovden then proceeded to ask to meet with Plaintiff. The two then met and Hovden informed Plaintiff that she was to be immediately terminated from Defendants' employment. When Plaintiff asked for a reason for her abrupt termination, Hovden stated that Plaintiff had

been insubordinate to her. That allegation was false and Plaintiff had never been insubordinate to Hovden or any other company representative.

22. As a result of Defendants' actions complained of herein, Plaintiff has suffered a loss of wages and benefits, both past and in the future. In addition, she has suffered emotional and mental distress, embarrassment and humiliation, and damage to her reputation.

### FIRST CLAIM – FAMILY AND MEDICAL LEAVE ACT

1. Plaintiff repleads the allegations contained in paragraphs 1-22 of this Petition as if fully set forth herein.

2. Plaintiff's medical condition, as described above, constituted a "serious health condition" under the terms of the Family and Medical Leave Act. As such, Plaintiff's status is that of an "eligible" employee under the FMLA.

3. Defendants' actions in terminating Plaintiff from her employment on January 31, 2011, were in retaliation for the fact that Plaintiff had previously exercised certain rights under the Family and Medical Leave Act.

4. Defendants' actions in terminating Plaintiff from her job on January 31, 2011, violated the provisions of the Family and Medical Leave Act, 29 U.S.C. Section 2611.

5. As a result of the actions complained of, Plaintiff has sustained the losses and damages set out in paragraph 22 of this Petition.

6. The Defendants' actions complained of above were reckless, willful, malicious, and wanton, and justify an award of liquidated damages in this suit.

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment on her behalf finding that Defendants violated the Family and Medical Leave Act in terminating her from her job position on January 31, 2011; that the Court order Plaintiff be reinstated to her prior job

position with Defendants; that Plaintiff be awarded the relief of all back pay and lost benefits to which she is entitled; that she be awarded damages representing any future lost benefits and lost income that she is reasonably likely to incur beyond the trial date; that she be awarded the sum of no less than Fifty Thousand Dollars ($50,000) for emotional pain, distress, humiliation, and damage to her reputation; that she be awarded the sum of no less than Sevety-five Thousand Dollars ($75,000) in liquidated damages; that she be awarded her reasonable attorney fees pursuant to the Family and Medical Leave Act; and that she be awarded interest as provided by law, the costs of this suit, and whatever other relief the Court deems appropriate.

Thomas M. Werner
1441 – 29th Street, Suite 111
West Des Moines, Iowa 50266-1309
Telephone: (515) 225-2888
Facsimile: (515) 224-6737
E-mail: twerner777@yahoo.com

ATTORNEYS FOR PLAINTIFF